The opinion below is hereby signed.  Dated: August
1, 2005.

S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                          )
                               )
J. MICHAEL SPRINGMANN,         )     Case No. 04-1508
                               )     (Chapter 7)
                Debtor.        )

OPINION REGARDING OVERRULING TRUSTEE'S
OBJECTION TO CLAIMED EXEMPTION OF RESIDENCE

The debtor, J. Michael Springmann, claimed as exempt the
full value of his home, a single family residence, under D.C.
Code Ann. § 15-501(a)(14) (West 2004) (permitting exemption of
"the debtor's aggregate interest in real property used as the
residence of the debtor").  The chapter 7 trustee, Marc E.
Albert, has objected that the exemption should be reduced based
on those parts of the residence Albert contends are not being
"used as the residence of the debtor" within the meaning of § 15-
501(a)(14).  At the time Springmann filed the petition, he used
part of his basement as his home office, and he rented out two of
his bedrooms.  For the reasons explained below, the trustee's
objection will be overruled.

I

The residence at issue is a single-family residence, a colonial brick, two-story home with basement located in the American University Park neighborhood in the District of Columbia.  The second floor contains a master bedroom with bathroom, two smaller bedrooms, and a second bathroom.  Each of the smaller bedrooms has its own set of locks and is furnished as a bedroom.  The basement consists of at least two rooms.  The main area of the basement is finished, to a degree, and has a desk with a computer.  Connected to this main area is a laundry room.

Springmann uses the main area of the basement (16.67% of the area of the house) as a law office for his legal practice. Springmann does not bring clients to his home to conduct business, and instead meets with clients outside of his home.  On his 2002, 2003, and 2004 Federal Income Tax Returns (Form 1040), he claimed on Schedule C (Profit or Loss From Business), and the related Form 8829 (Expenses for Business Use of Your Home) deductions for various expenses allocable to the part of the basement used for the business (depreciation, real estate taxes, insurance (if paid), and utilities).

For approximately 10 years, Springmann has rented the two smaller bedrooms on the second floor of his home to students at American University.  Each year there are some days when the

bedrooms are not rented, as the leases typically are for the fall
and spring semesters and for part of the summer.  In 1997 and
1998 there were for some months a room has not been rented.
Springmann has a certificate of occupancy for tenants in the
property, and enters into a written lease with each tenant.  As
an example, Springmann supplied to the trustee a form he has used
reciting that "the Lessor does hereby let and demise to the
Lessee, the following described premises: the medium-sized
bedroom in the house at 4619 Yuma St. N.W., Washington, D.C. for
the term of six (6) months . . . ."  It provided that at the end
of the term of the lease, the lessee could convert the lease to a
month to month tenancy, which could be canceled by either party
upon 30 days notice, and provided that in the event of a default
by the lessee, Springmann could "proceed to recover possession of
said premises under and by virtue of the provisions of the law
relating to proceedings in cases between landlords and tenants."

    The tenants have access to the second bathroom on the second
floor as well as the common areas in the rest of the house.
Springmann on occasion uses the second bathroom himself as it
contains a bathtub (which he uses to soak his feet for a medical
condition) whereas the master bedroom's bathroom contains only a
shower.  For each of the tax years of 2002, 2003, and 2004, his
Form 1040, Federal Income Tax Return, Schedule E, listed the two
bedrooms as "rental real estate property," and answered "No" in

response to the question:

> For each rental real estate property listed on line 1,
> did you or your family use it during the tax year for
> personal purposes for more than the greater of:
> - 14 days, **or**
> - 10% of the total days rented at fair
>   rental value?

(Springmann did not offer any tax returns for earlier years

showing a different treatment.)  The response to the question on

the tax returns is consistent with the fact that although during

periods of non-rental, Springmann occasionally uses the two

bedrooms for his own personal purposes, that personal use had not

been significant.  Springmann's Schedules E showed:

| **Rents and Expenses** | **2002** | **2003** | **2004** |
|---|---|---|---|
| Rents received | 7,975 | 10,875 | 12,560 |
| Advertising | 25 | | |
| Insurance | | 869 | 740 |
| Cleaning & Maintenance | 401 | | |
| Repairs | 430 | | |
| Supplies | 673 | | |
| Taxes | 3,360 | 2,045 | 3,284 |
| Utilities | 793 | 1,276 | 1,587 |
| Depreciation | 22,101[1] | | |

---

[1] The validity of these items (note the 2002 depreciation
deduction in particular) is not at issue here, but the rental
character of the bedrooms, as reinforced by the Schedules E, is
of relevance.

The smaller rented bedroom consists of 80 square feet, and the second bedroom consists of 149 square feet, for a total of 229 square feet.  The house has 2,088 square feet, so the rented bedrooms represent 10.97% of the house's total square footage. That 10.97% represents a relatively insignificant occupancy by others to which the house has been put.

II

Springmann seeks to exempt the full value of his home under D.C. Code Ann. § 15-501.  Section 15-501 states in pertinent part:

> (a)  The following property of the head of a family or householder residing in the District of Columbia . . . is free and exempt from distraint, attachment, levy, or seizure and sale on execution or decree of any court in the District of Columbia:
>
> . . .
>
> (14) **the debtor's aggregate interest in real property used as the residence of the debtor**, or property that the debtor or a dependent of the debtor in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or dependent of the debtor.

D.C. Code Ann. § 15-501(a)(14) (bold supplied).

This provision appears to have borrowed in large part the language of 11 U.S.C. § 522(d)(1) (an exemption available to a debtor who, pursuant to 11 U.S.C. § 522(b)(1), elects the exemptions available under § 522(d) instead of exempting under § 522(b)(2) exemptions available under nonbankruptcy law).  Section

5

522(d)(1) provides that a debtor may exempt:

> **The debtor's aggregate interest**, not to exceed $18,450
> in value, **in real property** or personal property **that
> the debtor** or a dependent of the debtor **uses as a
> residence**, in a cooperative that owns property that the
> debtor or a dependent of the debtor uses as a
> residence, or in a burial plot for the debtor or a
> dependent of the debtor.

[Emphasis added.]  Unlike § 522(d)(1), which caps exemption of a

debtor's aggregate interest in the debtor's residence at $18,450,

the District's residence exemption is unlimited in amount.  The

court has been unable to find any decision that addresses the

exemptibility under § 522(d)(1) of the part of a real property

that is rented to others (with the other part resided in by the

debtor), but this is not surprising.  A majority of states have

"opted out" of the § 522(d) exemptions pursuant to § 522(b)(1),

which permits state law applicable to a debtor under § 522(b)(2)

to specifically not authorize the debtor to elect the exemptions

under § 522(d).  So the issue would not arise under § 522(d)(1)

in those states.  Moreover, in non-opt out states, a debtor may

voluntarily forego the § 522(d) exemptions and elect non-

bankruptcy law exemptions pursuant to § 522(b)(2), and in any

event the cap on the § 522(d)(1) exemption would render the issue

moot or as entailing a relatively small amount.[2]  As will be

seen, decisions under 11 U.S.C. § 1322(b)(2) (prohibiting

modification of debt "secured only by a security interest in real

property that is the debtor's principal residence") and decisions

under other states' similarly residence-use-restricted homestead

law are arguably of precedential value in addressing the issue.

III

The trustee notes that the exemption statute restricts the

scope of the exemption to "the debtor's **aggregate interest** in

real property used as the residence of the debtor." [Emphasis

added.]  The trustee argues that the phrase "aggregate interest"

---

[2]  When § 522(d)(1) is invoked, its statutory cap currently
stands at $18,450.  A debtor may be able to take the full
exemption even though not claiming the rented part exempted, thus
mooting the issue.  Even if she can not thus exhaust the
exemption, the amount she claims as exempt with respect to the
owner-occupied part would reduce dollar for dollar the amount of
the statutory cap left at issue regarding the renter-occupied
part.

For example, in the case of a duplex with each unit having
the same amount of equity, and with only one unit owner-occupied,
at most $9,225 would ever be at issue.  (If the equity for each
unit exceeds $9,225, the amount at issue decreases by the amount
of the excess above $9,225.  Similarly, if the equity for each
unit falls short of $9,225, the amount at issue decreases by the
amount of the shortfall.)

If the debtor can invoke marshaling to channel payment of
any secured debt on a property first from the non-owner-occupied
part of the property, see In re McCambry, ___ B.R. ___, 2005 WL
1581092 *6 (Bankr. D. Kan. July 1, 2005), but see In re Miller,
299 F.3d 183 (3d Cir. 2002); In re Klein, 272 B.R. 807 (Bankr.
M.D. Fla. 2002), that would further explain the lack of §
522(d)(1) litigation over partially rented-out homesteads.

7

implies that the statute contemplates adding up the portions or sections of the property which comprise the debtor's residence in order to determine what may be exempt.  Therefore, argues the trustee, the aggregate interest "used as the [debtor's] residence" is the total amount of space after adding all parts of the property that are used as a residence.

However, the term "aggregate interest" is used in other parts of D.C. Code § 15-501(a) not containing any use restriction.[3]  Section 15-501(a)(14) appears to have been patterned on 11 U.S.C. § 522(d)(1).  As stated in <u>In re Maddox</u>, 713 F.2d 1526, 1530 (11th Cir. 1983) "[t]he word 'interest' [in § 522(d)(1)] is a broad term encompassing many rights of a party, tangible, intangible, legal and equitable . . .", and this could explain the use of the word "aggregate."  For example, a debtor could have both a 100% life estate interest and a fractional remainder interest in real property, and § 522(d)(1) would be applied to the aggregate of those interests.  Section 522(d)(1)'s use of the language "aggregate interest" has also been held to include not only the debtor's equity in the property but also

_____

[3]  § 15-501(a)(3) permits exemption of "the debtor's aggregate interest in any property, not to exceed $850 in value, plus up to $8,075 of any unused amount of the exemption provided under paragraph (14) of this subsection."  § 15-501(a)(4) permits exemption of "the debtor's aggregate interest, not to exceed $1,625 in value, in any implements, professional books, or tools of the trade of the debtor or the trade of a dependent of the debtor (this exemption shall also apply to merchants)."

"the right to possession, the right to redeem after default but prior to foreclosure (the 'equity of redemption'), and the right to make mortgage payments in the future and thus create a future equity." In re Ricks, 40 B.R. 507, 509 (Bankr. D.D.C. 1984).

In other words, the phrase "aggregate interest in property" means the bundle of rights the debtor has in property of an exempt character.  The phrase "aggregate interest in property" does not by itself answer whether the part of a real property rented to others or used for business purposes cannot enjoy the residential exemption under § 15-501(a)(14).

IV

With respect to the effect of Springmann's conducting business in his dwelling house (in the form of a basement office for his practice as an attorney), the court turns to decisions in other states.  When a debtor's residence is used incidentally by the debtor to conduct a business, as here, the courts generally have construed whatever homestead statute applies as permitting the debtor to exempt the entire dwelling.  See generally Annotation, Character of Property as Homestead as Affected by Its Use for Business as Well as Residence Purposes, 114 A.L.R. 209. Caution must be exercised, because homestead statutes vary, with some expressly authorizing the use of a homestead to conduct a business.

9

However, even under homestead exemption laws, which like the District of Columbia's residence exemption law, are residence-use-restricted, courts have held that a debtor may conduct his business on his homestead without losing his homestead exemption. See In re MacLeod, 295 B.R. 1 (Bankr. D. Me. 2003) (under Maine statute limiting homestead exemption to "real or personal property that the debtor . . . uses as a residence . . . .", 14 M.R.S.A. § 4422(1)(A), "[r]esidential use may extend . . . to incidental business use, like a home office"); In re Nelson, 225 B.R. 508 (Bankr. S.D. Fla. 1998) (applying Florida homestead exemption law which is residence-use-restricted,[4] where debtor conducted landscaping business on his property, the court stated: "There is nothing within Florida law that provides that, should a person conduct business on his homestead property, he loses his homestead status."); Edward Leasing Corp. v. Uhlig, 652 F. Supp. 1409 (S.D. Fla. 1987). See also In re Haning, 252 B.R. 799 (Bankr. M.D. Fla. 2000) (following Nelson and Uhlig); In re McLachlan, 266 B.R. 220 (Bankr. M.D. Fla. 2001); Uniform Exemptions Act 1976[5] § 4, Comment (1) ("Nor does commercial use

_____

[4]   Article X, § 4(a)(1) of the Florida Constitution, adopted in 1968, permits an exemption that, in relevant part, is "limited to the residence of the owner or the owner's family."

[5]   "The legislative history indicates that the federal exemptions are derived in large part from the Uniform Exemptions Act, promulgated by the Commissioners of Uniform State Laws in 1976. H.R.Rep. No. 595, 95th Cong. 1st Sess. 361, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 6317." In re Kochell, 732

of property occupied as a home deprive it of its exempt

character." [citing S. Thompson, Homestead and Exemption Laws §

121-123 (1878); R. Waples, Homestead and Exemption 235-38 (1893);

Vukowich, Debtors' Exemption Rights, 62 Geo. L.J. 779, 805

(1974).]).  See also  In re Shepardson, 28 F.2d 353 (S.D. Cal.

1928):

> Where the claimant is established upon the property for
> the main purpose of engaging in a certain business, and
> uses a portion thereof for dwelling purposes only, that
> he may be convenient to that business, it may not be
> said that the property comes within the purpose of the
> statute allowing homestead exemption.  On the other
> hand, where the place is primarily the home of the
> family, and some business is engaged in on the premises
> in an incidental way, the conduct of such a business
> does not deprive the owner of the right to his
> homestead claim.[6]

Cf. Lievsay v. Western Fin. Sav. Bank, F.S.B. (In re Lievsay),

199 B.R. 705, 709 (9th Cir. B.A.P. 1996) (debtor's use of part of

home as office did not disqualify a home mortgage from being "a

---

F.2d 564, 565 (7th Cir. 1984).

    [6] That decision quoted the applicable homestead statutory
provisions:

> The California statute (section 1237, C.C.) declares
> that 'the homestead consists of the dwelling house in
> which the claimant resides, and the land on which the
> same is situated, selected as in this title provided.'
> The value of the homestead to be so selected, in case
> such selection is made by the husband or the wife, must
> not exceed $5,000. C.C. Cal. Secs. 1260, 1261, and
> 1262.

28 F.2d at 354.

claim secured only by a security interest in real property that
is the debtor's principal residence" under 11 U.S.C. §
1322(b)(2)), appeal dismissed, 118 F.3d 661 (9th Cir. 1997),
cert. denied, 522 U.S. 1149 (1998). But see In re Hager, 74 B.R.
198 (Bankr. N.D.N.Y. 1987), aff'd, 90 B.R. 584 (1988) (13.08% of
residence used by debtor for his rendition of chiropractic and
masseur services was not exempt).

It is common for a homeowner to utilize the home to engage
in business activities or designate a portion of the home to
incidental use as an office.  Such uses do not change the
character of the home.  Accordingly, the court concludes that
Springmann's use of part of his basement as an office in
conducting his practice as a lawyer does not make his interest in
that part of the house non-exemptible.

V

The more difficult issue is whether the portion of the Yuma
Street property rented to university students ought to be held
non-exemptible because that portion constitutes rental real
estate, occupied by others, and not property used as Springmann's
residence.

A.

The trustee argues that within the meaning of the statute,
the rented bedrooms are not "real property used as the residence

12

of the debtor" because the bedrooms themselves are not used in any significant way by Springmann for his residential purposes. Springmann argues that within the meaning of the statute, the rented bedrooms are part of "real property used as the residence of the debtor" because the bedrooms are contained within a single house used as his residence, and the statute does not require that the real property be used **only** as the residence of the debtor.

The statute is arguably sufficiently ambiguous to permit either interpretation.  Generally, courts should construe ambiguous exemption statutes liberally in favor of the debtor, Wallerstedt v. Sosne (In re Wallerstedt), 930 F.2d 630, 631 (8th Cir. 1991), but legislative history or logic may dictate a more narrow construction, Christo v. Yellin (In re Christo), 192 F.3d 36, 39 (1st Cir. 1999).

The difficulty with construing the statute as urged by Springmann is that it would extend the exemption to a 100-room hotel or a 100-room apartment building in which the debtor maintains a residence.  The City Council is not likely to have intended that result.  See In re Shillinglaw, 81 B.R. 138, 140 (Bankr. S.D. Fla. 1987), aff'd, 88 B.R. 406 (S.D. Fla. 1988).[7]

---

[7]  In Shillinglaw, the Florida Constitution was ambiguous regarding whether the residency limitation to the homestead exemption applied in the case of rural property as well as property located in municipalities.  The court resolved the

13

Cf. Lomas Mortgage, Inc. v. Louis, 82 F.3d 1, 6 (1st Cir. 1996),

("It is unlikely Congress intended the antimodification provision

[of 11 U.S.C. § 1322(b)(2)] to reach a 100-unit apartment complex

simply because the debtor lives in one of the units."). As a

matter of common sense, real property relatively consistently

rented out to others, and in which the debtor herself does not

reside, cannot qualify as "real property used as the residence of

the debtor."

Moreover, although the statute does not refer to "real

property used **only** as the debtor's residence," neither does it

refer to "**a** real property used as the debtor's residence," thus

suggesting that the zoning of a property as a single zoning unit

is not the controlling factor, but instead that the residential-

---

ambiguity against the debtor, stating:

> I cannot believe, however, that the construction of a
> hotel, apartments, or homes on rural property and the
> leasing of those accommodations to provide homes for
> others would shield the property so used from
> creditors' claims merely because the owner lives in one
> of those units. . . . . I doubt that anyone could
> intend, for example, to permit a property owner on Key
> Biscayne (an unincorporated area) to shield a 1,000
> room hotel from his creditors' claims merely because it
> was built on less than 160 acres owned by him and he
> lives in one of the rooms.

81 B.R. at 140. Accord, In re Wierschem, 152 B.R. 345, 348-49
(Bankr. M.D. Fla. 1993), and In re Nofsinger, 221 B.R. 1018,
1020-21 (Bankr. M.D. Fla. 1998), both rejecting the contrary
authority of In re Israel, 94 B.R. 729, 730 (Bankr. N.D. Fla.
1988).

use inquiry ought to be applied to each separate component of the real property.  "Local zoning laws may have some relevance but local ordinances cannot and do not govern the scope of the homestead exemption in bankruptcy."  In re Dudeney, 159 B.R. 1003, 1006 (Bankr. S.D. Fla. 1993).

B.

The court has examined decisions regarding the exemptibility of rented portions of a debtor's residential property under the homestead exemption laws of other states, albeit not exhaustively.  Many of those decisions are inapplicable because the statutes are not residence-use-restricted, and indeed their reasoning, in emphasizing the acreage or dollar limitation of the applicable exemption statute, actually support a restrictive interpretation when, in contrast, a state's homestead exemption law, like the District of Columbia's, has no limitation other than the residence-use restriction.  For example, in In re Trigonis, 224 B.R. 152  (Bankr. D. Nev. 1998), in permitting exemption of a multi-unit building, the court applied a statute which permitted exemption of a homestead defined as meaning "the property consisting of . . . [a] quantity of land, together with the dwelling house thereon and its appurtenances . . . ."

Nev. Rev. Stat. Ann. 115.005(2)(a) (Michie 1993).[8]  The court

noted that a use-type exemption may create a different result,

_____

[8] As similar decisions under similar homestead exemption
laws that were not residence-use-restricted, the court pointed to
Wells v. West Greeley Nat'l Bank, 29 B.R. 688, 689-90 (Bankr. D.
Colo. 1983) (**Colorado** "homestead" was defined as "a house . . .
and any number of acres"); In re Ruggles, 210 B.R. 57, 61 (Bankr.
D. Vt. 1997) (**Vermont** "homestead" was defined as a "dwelling
house, outbuildings and the land used in connection therewith . .
. together with rents . . . .") (but see In re Evans, 51 B.R. 47
(Bankr. D. Vt. 1985) (house rented to another on non-subdividable
parcel that was not part of the outbuildings used in connection
with the part of the parcel used as the debtor's homestead was
not exempt); and In re Patten, 71 B.R. 574, 575-76 (Bankr. D.N.D.
1987) (**North Dakota** homestead exemption consisted of "the land
upon which the claimant resides, and the dwelling house on that
land in which the homestead claimant resides, with all its
appurtenances, and all other improvements on the land . . . .")).
    A similar result has been reached in decisions construing
the **Massachusetts** homestead exemption law (allowing an exemption
of "[a]n estate of homestead to the extent of $300,000 in the
land and buildings may be acquired pursuant to this chapter by an
owner or owners of a home or one or all who rightfully possess
the premise by lease or otherwise and who occupy or intend to
occupy said home as a principal residence").  See In re Brizida,
276 B.R. 316 (Bankr. D. Mass. 2002) (owner of a three-family
structure was entitled to a homestead exemption in entire
property and not just in single unit that he occupied as
home); In re Carey, 282 B.R. 118 (Bankr. D. Mass. 2002) (same).
    A similar result was reached in In re Vizentinis, 175 B.R.
824, 826 (Bankr. E.D.N.Y. 1994) (under **New York** law permitting
homestead exemption for "a lot of land with a dwelling" if the
property does "not excee[d] ten thousand dollars in value above
liens and encumbrances [and is] owned and occupied as a principal
residence," entire building was exempt though debtor occupied but
one of four apartments).
    Under **Minnesota** law, the rental portion of homestead
property was held exempt in Umland v. Holcombe, 3 N.W. 341, 342
(Minn. 1879) ("The statute declares that the quantity of land
designated by it, and the dwelling-house thereon, and its
appurtenances, owned and occupied by any resident of the state,
shall not be subject to attachment, levy, or sale upon execution,
or any other process issuing out of any court within this
state.").

16

citing to <u>Jackman v. Nance</u>, 857 P.2d 7, 10 (Nev. 1993), in which

the court observed:

> In many "use oriented" jurisdictions, the quantity of
> land allowed has been limited while not restricting the
> value which attaches to that land.  In those
> circumstances, courts have construed the law so as to
> benefit creditors because of the debtor's possible
> abuse in protecting the specified quantity of land with
> an underlying value of great magnitude.  However, that
> concern does not exist with respect to [the Nevada
> statute] because the value of the homestead is limited.
> [Citation omitted.]  The value limitation included in
> [the Nevada statute] thus safeguards against the type
> of potential debtor abuse in the jurisdictions that
> emphasize homestead use.

<u>Florida Decisions</u>

The trustee points to Florida's homestead law as being

similar to the District of Columbia's.  Article X, § 4(a)(1) of

the Florida Constitution, adopted in 1968, permits the exemption

of:

> a homestead, if located outside a municipality, to the
> extent of one hundred sixty acres of contiguous land
> and improvements thereon, which shall not be reduced
> without the owner's consent by reason of subsequent
> inclusion in a municipality; or if located within a
> municipality, to the extent of one-half acre of
> contiguous land, **upon which the exemption shall be
> limited to the residence of the owner or the owner's
> family**[.]

[Emphasis added.]  The current Florida homestead law amended a

prior law which provided that the exemption "shall not extend to

more improvements or buildings than the residence and business

house of the owner."  Fla. Const. art. X, § 1 (1885).  The

17

amendment of the law evidenced an unequivocal intent to limit the
exemption to strictly the residence of the debtor.  Although the
District of Columbia statute permits in relevant part an
exemption of "the debtor's aggregate interest in real property
used as the residence of the debtor," the language used similarly
expresses a use limitation: real property not used as the
debtor's residence does not qualify for the exemption.

Because the Florida law, although placing an acreage
limitation, places no dollar limitation on its homestead
exemption, there has been frequent litigation under that law of
the issue of what constitutes the debtor's residence when part of
the property has been rented.  Most of the decisions involve
rental of land to a third-party business; rental of a separate

building; or rental of recognizably distinct living units.[9]
Nevertheless, they stand for the proposition that "the homestead
exemption only extends to that portion of the property which a
debtor uses as his residence and cannot include any portion which
is rented to and occupied by a third party or used by the third

---

[9]  See, e.g., In re Klein, 272 B.R. 807 (Bankr. M.D. Fla.
2002) (exemption does not cover a detached guesthouse that is
rented out seasonally); In re Bell, 252 B.R. 562 (Bankr. M.D.
Fla. 2000) (exemption covered main residence, but not separate
two-story garage which was not certified for residential use,
which was acquired and built for commercial use, and whose only
use had been as rental property for nearly three years); In re
Oliver, 228 B.R. 771 (Bankr. M.D. Fla. 1998) ("Debtor is entitled
to an exemption only for his residence and not for the part of
the duplex which is rented out."); In re Nofsinger, 221 B.R. 1018
(Bankr. S.D. Fla. 1998) (the debtor could exempt the dwelling on
her real property, but not the irrigated part of her property
that was leased to a third party to use for his own business); In
re Pietrunti, 207 B.R. 18 (Bankr. M.D. Fla. 1997) (assemblage of
real properties exempt as to mobile home in which the debtors
resided, and non-exempt as to a house rented to others, and two
mobile homes that had been rented and were otherwise vacant); In
re Dudeney, 159 B.R. at 1006 (court recites prior rulings denying
exemption of the part of a duplex-not salable by itself-that was
used as rental property, and denying exemption of a detached
garage apartment on property that could not be subdivided);  In
re Weirschem, 152 B.R. 345, 349 (Bankr. M.D. Fla. 1993) (debtors
were allowed to exempt only the unit in which they resided and
not the other beach apartment units, each constituting a self-
contained dwelling containing kitchen and bathroom facilities);
First Leasing & Funding of Florida, Inc. v. Fiedler, 591 So. 2d
1152, 1153 (Fla. 2nd Dist. Ct. App. 1992) (two units of triplex
rented to others not exemptible);  In re Shillinglaw, 81 B.R.
138, 140 (Bankr. S.D. Fla. 1987), aff'd, 88 B.R. 406 (S.D. Fla.
1988) (barn leased to and occupied exclusively by tenant was not
exempt); In re Aliotta, 68 B.R. 281 (Bankr. M.D. Fla. 1986)
(debtors owning apartment building could only exempt the
apartment in which they reside); In re Rodriquez, 55 B.R. 519,
520 (Bankr. S.D. Fla. 1985) (debtors could not exempt the portion
of their one-story building they rented out that was separated
from the debtor's portion by an internal wall and where each
portion had its own entrance).

party as his own business." Nofsinger, 221 B.R. at 1021.

Two cases took the view that when the rented portion of a property cannot be sold under existing zoning laws, the debtor is entitled to the homestead exemption. In re Kuver, 70 B.R. 190 (Bankr. S.D. Fla. 1986) (debtor entitled to homestead exemption for a duplex where the rental half could not be lawfully sold under existing zoning laws); In re Makarewicz, 130 B.R. 620 (Bankr. S.D. Fla. 1991) (property was zoned as single family residence with no ability to sever and convey the rented portions of the garage). However, Kuver and Makarewicz were implicitly overruled by Englander v. Mills (In re Englander), 95 F.3d 1028, 1031, 1032 nn. 22-24 (11th Cir. 1996) (zoning restrictions against sale of less than the entirety of a property did not make exempt the entire property when it exceeded the acreage limitation for a homestead exemption), cert. denied, 520 U.S. 1186 (1997). See Nofsinger, 221 B.R. at 1020 n.2. Moreover, they were expressly criticized in Dudeney, 159 B.R. at 1006 n.1.

In Englander, the bankruptcy court had declined to hold as non-exempt, under the residence-use restriction, a rented apartment over a garage attached to a single-family residence (and instead disallowed the exemption to the extent it exceeded the acreage limitation). Englander, 156 B.R. 862, 866-67 (Bankr. M.D. Fla. 1992). Although mentioning Kuver and Makarewicz, the court appeared not to embrace their severability requirement

20

(although the decision is less than clear in this regard).
Instead, it reasoned that "the garage apartment was built on
homestead property for utility purposes and not rental purposes,"
id. at 867, a relevant factor under the Florida homestead
exemption law prior to its being amended to include the
residential-use restriction.  The court failed to articulate a
rationale for how that factor could survive the amendment of the
law, and thus is unpersuasive in placing reliance on that factor.

Without acknowledging the criticisms of Kuver and
Makarewicz, or the weakness of the bankruptcy court's approach in
Englander, the court in In re Ballato, 318 B.R. 205 (Bankr. M.D.
Fla. 2004), relied upon those decisions in concluding that in the
case of a single-family residence, with no severable parts, the
entire property would be exempt despite the existence of renters.
Even though Ballato's logic might be questioned, it is important
to note that the cases it distinguished all themselves emphasized
the separate character of the part of the premises rented in
concluding that an exemption was unavailable for that rented
part, and the result may be justified as a matter of common sense
depending on the extent and nature of the renting of rooms.

## Decision Under Maine Law

Maine's homestead exemption law is limited to "real or
personal property that the debtor ... uses as a residence...." 14
M.R.S.A. § 4422(1)(A).  In In re MacLeod, 295 B.R. 1 (Bankr. D.

21

Me. 2003), the debtor owned a mobile home park consisting of a
single, undivided parcel of real estate containing spaces (called
lots) for twenty mobile home units.  He resided in a mobile home
on one of the lots while renting most of the rest, and
consistently treated the park as a business operation for tax
purposes.  The court confined the exemption to the debtor's
mobile home and, because the trustee had not objected, the lot on
which it rested.[10]

### New Hampshire and Kansas Law

Similar results have been reached under New Hampshire and
Kansas homestead exemption statutes which, although not expressly
containing a residence-use restriction, have been interpreted as

---

[10] The debtor used one lot for storage, and his adult son
resided on another.  Although the court acknowledged that a
debtor's homestead exemption extends to "incidental business use,
like a home office," the court apparently viewed the lot devoted
to storage as related to the rented lots, instead of incident to
the debtor's residence.

embodying such, thus excluding from exemption in New Hampshire[11]

and in Kansas[12] the part of a debtor's property occupied by

others.  But none of the decisions involved roomers within a

single family residence.

<u>Alaska Decision</u>

Alaska's homestead exemption law is also residence-use-

restricted.  The applicable statute, A.S. 09.38.010(a), provides:

> An individual is entitled to an exemption as a
> homestead of the individual's interest in property in
> this state used as the principal residence of the

---

[11]   Under New Hampshire law pursuant to which case law
defines the homestead as "the home, the house, and the adjoining
land, where the head of the family dwells; the home farm.  It
does not extend to other tenements, lots and farms, that are not
occupied personally by the owner and his family; houses in which
they do not dwell, and farms on which they do not live."  <u>Hoitt
v. Webb</u>, 36 N.H. 158, 166 (1858).  This has been applied as
embodying a residence-use restriction.  <u>See</u> <u>In re Tsoupas</u>, 250
B.R. 466, 468 (Bankr. D.N.H. 2000) (homestead exemption applied
only to the apartment unit in which debtor resides); <u>Kilburn v.
Filby (In re Filby)</u>, 225 B.R. 532, 536 (Bankr. D.N.H. 1998)
(homestead exemption applied only to the one duplex unit in which
the debtor resides; <u>In re Mirulla</u>, 163 B.R. 910, 912 (Bankr.
D.N.H. 1994) (homestead exemption applied only to the 5 of 32
rooms of a hotel in which the debtor actually resided).

[12]   A Kansas homestead exemption statute similar to New
Hampshire's has been construed in one federal decision as
residence-use-restricted.  In <u>Belcher v. Turner</u>, 579 F.2d 73
(10th Cir. 1978), the court held that the rented portion of a
duplex was *not* exemptible.  However, in <u>In re McCambry</u>, ___ B.R.
___, 2005 WL 1581092 (Bankr. D. Kan. July 1, 2005), the
bankruptcy court pointed to other Kansas decisions which appeared
to support a contrary conclusion (one having allowed exemption of
the part of the property used as a hotel), and pointed to the
existence of owner-control over the property (a factor not
advanced by the debtor in <u>Belcher</u>) in holding that the rented
part of a duplex *was* exemptible.

individual or the dependents of the individual, but the
value of the homestead may not exceed [$64,800.00].[13]

In In re Shell, 295 B.R. 129 (Bankr. D. Alaska 2003), the court
held that the debtor could exempt a six-unit apartment as a
homestead when he occupied one unit and rented out the other
five.  The court reasoned that the legislative history
demonstrated that the homestead is designed to both provide a
place to reside and keep the debtor from seeking public
assistance, and that this latter goal was advanced by including
in the homestead income-producing property.  The court noted that
Alaska's statute had evolved from a prior statute under which the
homestead of a family was exempt, with a requirement that the
"homestead must be the actual abode of and owned by such family
or some members thereof," and a dollar limitation.  That statute
had been construed as permitting exemption of a house whose first
floor was used by the debtor and the other home-owner as a
grocery store.  The legislature had shown no intention to change
that result under the amended statute which was intended to
liberalize exemptions.

## Decisions Under 11 U.S.C. § 1322(b)(2)

Under 11 U.S.C. § 1322(b)(2), a plan may not modify the
rights of holder of a secured claim if the claim is "a claim

---

[13]  The previous dollar cap in AS 09.38.010(a) was increased
by 8 Alaska Admin. Code 95.030(a).

secured only by a security interest in real property that is the
debtor's principal residence."  In Lomas Mortgage v. Louis, 82
F.3d 1, the Court of Appeals for the First Circuit held that this
antimodification provision did not apply to a multi-unit property
in which the debtor resided in only one unit.[14]  As Lomas notes,
82 F.3d at 6-7, in 1994 Congress enacted an identical
antimodification provision for chapter 11 cases, 11 U.S.C. §
1123(b)(5), and the Judiciary Committee Report specified that the
provision:

> does not apply to a commercial property, or to any
> transaction in which the creditor acquired a lien on
> property other than **real property used as the debtor's
> residence**. [Emphasis added.]

The Judiciary Committee Report referred to In re Ramirez, 62 B.R.
668 (Bankr. S.D. Cal. 1986), as an example for this proposition.
Lomas, 82 F.3d at 7.  Ramirez held that the antimodification
provision of § 1322(b)(2) does not apply to multi-unit houses if

---

[14]  Accord, In re Bulson, ___ B.R. ___, 2005 WL 1397149
(Bankr. W.D. Mich. 2005); Maddaloni v. Ford Consumer Finance Co.,
Inc. (In re Maddaloni), 225 B.R. 277 (D. Conn. 1998).  Contra In
re Macaluso, 254 B.R. 799, 800 (Bankr. W.D.N.Y. 2000).  Some
decisions take a multi-factor approach that lies between the
bright-line approaches of Lomas and Macaluso.  See Litton Loan
Servicing, LP v. Beamon, 298 B.R. 508, 512 (N.D.N.Y. 2003);
Brunson v. Wendover Funding, Inc. (In re Brunson), 201 B.R. 351,
354 (Bankr. W.D.N.Y. 1996) (asking whether the transaction was
"predominantly viewed by the parties as a loan transaction to
provide the borrower with a residence"); In re Scarborough, 2004
WL 2431544 (E.D. Pa. 2004).  However, those decisions disagreeing
with Lomas would not alter the court's conclusion in this case
that Springmann used the entire property as his residence despite
renting out the two bedrooms.

the security interest extends to rental units.

Sections 1123(b)(5) and 1322(b)(2), and <u>Ramirez</u>, as interpreted by <u>Lomas</u>, thus support the proposition that a multi-unit house that is not solely debtor-occupied, based on a rental or rentals to others, is not in its entirety "real property used as the debtor's residence."[15]

C.

The foregoing survey of the rulings under similar statutory provisions inclines the court to the view that the unlimited nature of the District of Columbia's homestead exemption would result in the residential-use restriction of D.C. Code Ann. § 15-501(a)(14) being applied to disqualify for exemption those units of a multi-unit property that are leased to others. However, the foregoing survey does not provide a clear answer to whether the District's residence exemption extends to rooms in the debtor's

---

[15] The requirements for qualifying for the antimodification provisions of §§ 1123(b)(5) and 1322(b)(2) may be more expansive than the requirements for qualifying for a residence-use-restricted homestead exemption in one regard irrelevant to the issue addressed here of the effect of rental of part of the property. If a loan served to finance the purchase of a large significant commercial operation on land with a home located on it, so that the loan was commercial in nature, some decisions hold that the antimodification provisions do not apply even though the home is the debtor's principal residence. <u>See</u> <u>In re Leazier</u>, 55 B.R. 870 (Bankr. N.D. Ind. 1985) (farm); <u>In re Hines</u>, 64 B.R. 684 (Bankr. D. Colo. 1986) (same). In contrast, operation of a commercial enterprise on property has been held not to destroy the homestead exemption for that property on which is located the debtor's home. <u>See</u> <u>In re Nelson</u>, 225 B.R. at 508.

home that are rented to others.  Carried to a logical extreme,
the decisions disallowing the homestead exemption based on a
residence-use restriction in the case of separate units rented to
others arguably would require disallowance of the exemption with
respect to rooms rented out within a single-family residence.
However, those decisions were careful to note the separate unit
character of the rented units.  Only Ballato addressed the issue
of renters sharing a single-family residence with the debtor, and
in Ballato the court concluded that renting out part of a single-
family residence did not destroy the character of the property as
property used by the debtor as a residence.  Although the
reasoning of Ballato may be criticized, its result on the facts
of this case would not be.  Common sense dictates that a merely
incidental renting of one or two bedrooms to university students
in a three-bedroom single-family dwelling does not destroy the
character of those rooms as part of a real property used as the
debtor's residence.

A contrary conclusion could have adverse consequences in the
implementation of related statutory provisions.  If the rental of
a bedroom prevented that room from being part of property used as
a debtor's residence for purposes of the District's residence
exemption (and for purposes of 11 U.S.C. § 522(d)(1) which
contains an identical residence-use restriction), that would mean
under Lomas that the mere renting of a bedroom to a university

27

student would deprive the debtor's home mortgage of the
protection of the antimodification provisions of 11 U.S.C. §
1123(b)(5) and § 1322(b)(2).[16]    As a matter of common sense, one
would not think that renting out a bedroom to a university
student in a single family residence would mean that the home
mortgage debt is not "a claim secured only by a security interest
in real property that is the debtor's principal residence."  Such
a rental is merely incidental, and does not transform the
character of the property as "real property that is the debtor's
principal residence" within the meaning of §§ 1123(b)(5) and
1322(b)(1).

    The difficulty, of course, is one of line drawing: when does
renting out of part of the property cross the line and remove
that rented property from being part of real property used as the
debtor's principal residence?  When the space rented is not a
separate dwelling unit, such that the case is one of shared
residency, and when the extent of such rentals does not change
the character of the property into a commercial property (as in
the case of the bed and breakfast operation in In re McVay, 150
B.R. 254 (Bankr. D. Or. 1993), or a hotel as in Mirulla, 163 B.R.
at 910), the property in its entirety should still be viewed as

---

    [16]    As already noted, Lomas supports the proposition that a
multi-unit house that is not solely debtor-occupied, based on a
rental or rentals to others, is not in its entirety "real
property used as the debtor's residence."    Lomas was careful to
limit its holding to a multi-unit property.

being used as the debtor's residence.

A useful analogy is the line drawing that has been set forth in the regulations governing deduction of mortgage interest for a qualified residence under 26 U.S.C. § 163(h)(2)(D).  Under 26 C.F.R. 1.163-10T(p)(4), "[p]roperty that is not used for residential purposes does not qualify as a residence."  In turn, under  26 C.F.R. 1.163-10T(p)(4)(ii):

> If a taxpayer rents a portion of his or her principal or second residence to another person (a "tenant"), such portion may be treated as used by the taxpayer for residential purposes if, but only if--
>
> (A) Such rented portion is used by the tenant primarily for residential purposes,
>
> (B) **The rented portion is not a self-contained residential unit containing separate sleeping space and toilet and cooking facilities**, and
>
> (C) **The total number of tenants renting (directly or by sublease) the same or different portions of the residence at any time during the taxable year does not exceed two.**  For this purpose, if two persons (and the dependents, as defined by section 152, of either of them) share the same sleeping quarters, they shall be treated as a single tenant.

[Emphasis added.]  The lines drawn by the tax regulation are not adopted by this court for purposes of applying the residence exemption statute, but are illustrative that in determining whether property is used as a debtor's residence common sense dictates that the line ought not be drawn so that absolutely any rented portion of a property cannot qualify as part of property used by the debtor as a residence.

29

To recapitulate, common sense dictates that one or two bedrooms rented out in a single family residence to university students, with the students sharing a common entrance and enjoying use of the common areas of the house on a shared residency basis, are part of "the debtor's aggregate interest in real property used as the residence of the debtor" within the meaning of D.C. Code Ann. § 15-501(a)(14).  Nor does having one or two roomers in one's single-family home to generate extra income change the character of the real property into a principally nonresidential commercial enterprise of leasing out rooms (as in the case of a hotel or a bed and breakfast operation) such that only the space occupied by the debtor qualifies for the exemption.  That Springmann treated the two bedrooms on his tax returns as income-generating rental activity is only one factor the court will consider in determining whether he has used the entire real property as his residence.  What is stated in the tax forms is not dispositive evidence of the character of the property.  Accordingly, the court rejects the trustee's objection relating to the rented bedrooms.  An order follows.

[Signed and dated above]

Copies to: Debtor; Debtor's Counsel; Chapter 7 Trustee; Counsel for Chapter 7 Trustee; United States Trustee.

O:\Brandon Estela\Orders (Projects)\Order - Objection to Claim of Exemptions - Springmann - 04-01508 v7.wpd; August 1, 2005; 10:58 AM